**NOT FOR PUBLICATION OR CITATION**
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-065-HRW

WILLIAM R. KAPP                                                                                   PETITIONER

VS:                       **MEMORANDUM OPINION AND ORDER**

BRIAN J. PATTON, Warden                                                                  RESPONDENT

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Petitioner William R. Kapp, who is in the custody of the Federal Bureau of Prisons ("BOP") and confined in the Federal Correctional Institution in Ashland, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, and has paid the district court filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## CLAIMS

Petitioner challenges his conviction in a prison disciplinary proceeding, on the ground that his due process rights were violated.

## ALLEGATIONS

In a partially completed commonly used petition form, Kapp begins with his conviction in the United States District Court for the Northern District of Illinois on November 14, 2003. He was sentenced to fifty-one (51) months imprisonment. He supplies detailed allegations about the complained-of disciplinary proceedings in an attached typewritten memorandum and Exhibits, numbered (1) - (10). Record No. 2.

Petitioner's allegations and the attached incident report (Exhibit [hereinafter "Ex."] 1), written by a BOP officer named Anderson, contain the basic facts. At approximately 6:25 a.m., on the morning of June 10, 2006, a BOP corrections officer directed Kapp to urinate in a specimen bottle so that his urine could be tested for drug use. Kapp alleges that he attempted to comply but could not do so. After the officer waited two hours, the prisoner had still not provided the sample.

At 8:49 a.m., Officer Anderson wrote the incident report charging Kapp with the offense of failure to provide a urine sample or to take part in other drug abuse testing, a Code 110 offense under the BOP's disciplinary code.[1] Petitioner contended then and now that he simply

---

[1] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. §541.13, at Table 3. The most serious  serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

was not able to supply the sample. However, by 9:00 a.m., he told the officer that he was ready to provide it, but Anderson told him that it was too late.

When the incident report came before the prison unit's disciplinary committee, the petitioner's position was that he tried "very hard" to give the sample but could not. Because of the severity of the penalties which could be imposed, the committee referred the matter to a Disciplinary Hearing Officer ("DHO"), with the recommendation that Kapp lose 14 days of good conduct time if he were to be proven guilty.

According to the DHO's Report (Ex. 2), a hearing on the charge was held on June 15, 2006, and the petitioner again claimed that he did not refuse, but was unable, to give the urine sample until it was too late. Then, as now, he stated several reasons for his inability to comply: At the time he was ordered to provide the urine specimen, he had just urinated, emptying his bladder. As time passed without his providing the sample, he purportedly informed the officer of a "medical condition" and his use of methadone, both of which can cause urinary problems. He also pointed out that on the morning of the incident he had even asked for a catheter to extract urine for the test.

In the incident report, Officer Anderson had written that "Kapp was observed in his cell at approximately 06:30 am trying to circumvent providing a sample by dipping the specimen bottle in the commode. . . ." At the hearing, the petitioner told the DHO that this was "somewhat true." He stated that when he had initially tried to comply, he was sitting on the commode because his legs are unstable in the mornings; he dropped the specimen bottle, so "the shit

slipped into the bottle" at that time. The petitioner testified that when he was given a new bottle, he still could not urinate.

In addition to giving his own testimony, Kapp called a physician's assistant (P.A.) named Mullins. P.A. Mullins testified, however, that there was no medical reason why Kapp should not be able to give the urine sample. Petitioner attaches to his petition two sheets of medical information on methadone which he purportedly gave to the DHO. The other documentary evidence before the DHO was a memorandum from the P.A. and the original June 10, 2006 incident report written by Officer Anderson.

The DHO found that "having considered all relevant evidence, the greater weight of the evidence" supported the finding that the petitioner committed the offense with which he was charged. Kapp was sanctioned with the loss of 41 days GCT; 30 days in disciplinary segregation; and the loss of visitation privileges, the first year to lose all visiting privileges and the second year to have only restricted visitation privileges.

Kapp appealed the DHO's decision in BOP Administrative Remedy No. 426598, and he attaches copies of the documents exchanged as he exhausted the administrative process. Ex. 3-6. At every level of the administrative appeals, the BOP officials found that the required disciplinary procedures were substantially followed, there was evidence to support the DHO's finding of guilt, and the sanctions were appropriate. Ex. 4, 6.

Also attached to the instant petition is a 2004 letter from Kapp's doctor giving information on his treatment of the petitioner for "reflex sympathetic dystrophy ("RSD"), a chronic neurological syndrome. . . ;" a 2005 hand-written note which may be from a treating

physician showing that Kapp has RSD; and a page, apparently from the internet, which generally describes symptoms of "the final form" of RSD, including a "change in bowel or bladder function. . . ." Ex. 7-9. The petitioner's final attachment is also from the internet; it is a list of possible side effects of taking methadone hydrochloride orally, including "urinary retention or hesitancy."

With regard to his due process claims herein, Petitioner points to what he calls his "documented medical reason as to why he could not produce a sample," and then asserts that "neither the DHO or the BOP disputed Mr. Kapps's factual evidence, nor did either provide an explanation as to why they refused to credit that evidence." He also contends there was not "some evidence" of his guilt, as is required for a conviction to comport with due process under *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 447 (1985).

Petitioner Kapp asks the Court to order the expungement of the incident report and the removal of all sanctions.

## DISCUSSION

The Supreme Court of the United States has established that prison inmates possess a liberty interest in good time credits and the due process clause protects the loss or revocation of such credits.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the High Court held that a prisoner is entitled to certain procedural due process protections if he or she is faced with the loss of good conduct time ("GCT") or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In such disciplinary proceedings,

the following due process protections must be provided for the prisoner: (1) the right to appear before an impartial decision-making body; (2) a 24-hour written notice of the charge; (3) a qualified right to call witnesses; and (4) a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition, all as set out in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

Since the penalties imposed in this case included the loss of good conduct time, the instant petitioner was, indeed, entitled to these procedures. His own exhibits show that he clearly received the first three of these requisites. The Court construes his claim that he did not get an explanation of why the DHO disregarded his "exculpatory evidence" as claim that he was not supplied with the fourth *Wolff* component as listed above, *i.e.*, a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition.

However, this is refuted by the DHO report, which does, indeed, describe the "specific evidence relied upon," to find the prisoner guilty: Anderson and Mullins' writings, Kapp's and Mullins' testimonies, and the two medical documents which the petitioner had supplied. As to that documentary evidence, the DHO wrote as follows:

> . . . The documentation which you provided concerning your medical condition does not exclude you from being able to provide a urine sample. The issues which you pointed out are unresolved clinical issues and are not considered proven fact. Additionally, you provided information concerning the medicine Methadone. The medication sheet states as a possible side effect difficulty urinating. Your witness stated you have not reported difficulty urinating to medical staff. Medical staff stated there was no documented reason you should not have been able to provide the urine sample. Your submitted evidence does not excuse you from providing a urine sample.
>
> Therefore, having considered all relevant evidence, the DHO finds that the greater weight of the evidence supports the finding that you committed the prohibited act

>of Failure to Provide a Urine Sample or Take Part in Other Drug Testing, Code 110.

Ex. 2. The petitioner claims that this is not an explanation of why his exculpatory evidence was disregarded. The Court disagrees. The Court finds that the DHO's written report provided not only the evidence relied upon but explained why he did not give the petitioner's medical (purportedly "exculpatory") evidence as much weight as the petitioner wanted.

The DHO's report fulfilled not only the *Wolff* requirement that the decision maker set out the evidence relied upon, but it also contains the reasons for the sanctions chosen, also as required by *Wolff*, the DHO having written as follows:

> . . . The sanctions(s) imposed by the DHO were taken to let you know, that you and you alone, will be held responsible for your behavior at all times . . . in hopes that it will prompt you to modify your behavior and to deter you and others from committing a similar act in the future.

Ex. 2. The Court finds that the instant petitioner received all of the procedural process which he was due.

The Court now turns to Petitioner Kapp's second due process claim. He is correct that under *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), a conviction cannot be upheld as consistent with due process unless there is "some evidence" to support the disciplinary decision. "Some evidence," as its name suggests, is a lenient standard, however. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000).

The district court's role in reviewing a disciplinary conviction is extremely limited. The Court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes; a district court merely ensures that a disciplinary decision is not

arbitrary and does have evidentiary support. *Superintendent,* 472 U.S. at 457. Even meager proof will suffice. *Webb*, 224 F.3d at 652.

In the instant case, there is "some evidence" of Kapp's guilt of refusing to provide a urine specimen. He produced no urine sample as ordered despite being given over 2 hours to do so. Yet he said that he could produce a sample 11 minutes after the corrections officers had found him non-compliant. Further, he presented no medical or institutional history of not being able to give a urine sample; in fact, his live medical witness did not confirm such a fact. *See Wagner v. Seely, et al.*, 915 F.2d 1575 (7th Cir. 1990) (unpublished), *cert. denied* 501 U.S. 1219 (1991).

As aforestated, a federal court's review of a decision of a prison disciplinary decision does not involve a redetermination of an inmate's innocence or guilt. Further, a court is not required to made an independent assessment of witnesses' credibility. *Superintendent*, 472 U.S. at 455. Moreover, the credibility determinations of the hearing officers cannot be disturbed on appeal. 915 F.2d at 1576. This Court finds that the instant Petitioner's disciplinary conviction was supported by "some" evidence, and so his due process rights were also not violated with regard to the sufficiency of the evidence.

This Court's conclusion that there is no due process violation in the current fact pattern is consistent not only the above-cited Supreme Court law but also with the application of said law by another district court in the Sixth Circuit. In *Gomez v. Sniezek*, 2007 WL 171973 (N.D. Ohio 2007) (slip op.), a prisoner was charged with failure to provide a urine sample and defended himself with a similar claim, that he was unable to do so because of medication he had taken. As herein, the prisoner was found guilty and lost good time credits, the DHO therein

finding no "medical documentation that would indicate petitioner was physically incapable of complying." Citing both *Wolff* and *Superintendent*, the United States District Court for the Northern District of Ohio found no due process violation. In the instant case, similarly, none of Petitioner Kapp's documentation indicated that he, personally, was physically unable to comply with the urine request. Additionally, the P.A. testified that there was no reason he could not comply.

Having found that the challenged disciplinary conviction herein was not obtained in violation of Kapp's due process rights, the Court will deny his petition for writ of habeas corpus and dismiss his cause of action.

## CONCLUSION

Accordingly, Court being advised, **IT IS ORDERED** as follows:

(1)     William R. Kapp's petition for writ of habeas corpus is **DENIED**;

(2)     this action will be **DISMISSED**, *sua sponte*, from the docket of the Court; and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This July 11, 2007.



Signed By:
Henry R Wilhoit Jr.
United States District Judge